**Barbara E. CURL, Plaintiff,**

v.

**Leroy REAVIS, et al., Defendant.**

**No. ST–C–82–91–P.**

United States District Court,
W.D. North Carolina.

May 16, 1985.

---

Louis L. Lesesne, Jr., Charlotte, N.C., for plaintiff.

William L. Auten, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on January 18, 1985 for a determination of the amount of back pay and related relief to which the Plaintiff is entitled. The Plaintiff was represented by Louis L. Lesesne, Jr. The Defendant was represented by William L. Auten.

The Court has previously determined that the Plaintiff is entitled to back pay for patrol duty pay, including fringe benefits and cost of living increases, less her actual earnings from June 1980 until she is placed in or declines the first available patrol deputy position. On appeal, the Fourth Circuit Court of Appeals held that the Plaintiff is entitled to instatement in the first available patrol deputy position, with back pay as a patrol deputy until that time. 740 F.2d 1323. On September 12, 1984 the Plaintiff declined a patrol deputy position. Although the Plaintiff is entitled to recover back pay the parties are unable to agree on: (1) the amount of back pay; (2) the Plaintiff's entitlement to adjustment of her pension account in the State's retirement system; (3) the Plaintiff's entitlement to adjustment of her sick leave balance; and (4) the Plaintiff's entitlement to recover prejudgment interest.

After a full evidentiary hearing of the matter, the Court, having carefully considered the arguments of counsel and the testimony and exhibits, enters the following findings of fact and conclusions of law with respect to the amount of back pay to which the Plaintiff is entitled.

## FINDINGS OF FACT

(1) The Plaintiff is entitled to back pay as a patrol deputy from June 1980 until September 12, 1984.

(2) The patrol deputy position the Plaintiff applied for in June 1980 was filled by Officer Mike Privette. *Memorandum and Order, Finding of Fact 15*, p. 5, May 24, 1983.

(3) Officer Privette was originally hired on December 19, 1978 in a position other than road deputy. When he was reclassified as a road deputy on June 26, 1980 Officer Privette went from Grade 61, Step 1 (rate of pay $9,972.00 per year) to Grade 62, Step 1 (rate of pay $11,220.00 per year).

(4) The salaries of Officers James Alston, Phillip Edward Hollar, and Stephen

Eugene Wallace were the only other salaries offered for comparison in order to evaluate the amount of back pay to which the Plaintiff is entitled. The Plaintiff contends the Court should rely on Officer Alston's pay record. The Defendant contends the Court should rely on Officer Hollar's pay record.

(5) Officer Alston was originally hired in February 1978 as a deputy sheriff. When he was reclassified on December 26, 1979 he went from Grade 59, Step 2 (rate of pay $9,552.00) to Grade 61, Step 2 (rate of pay $10,392.00). On June 26, 1980 he received a department increment change to Grade 62, Step 1 (rate of pay $11,220.00 per year). On December 26, 1980 Officer Alston received a merit increase for his outstanding performance. When he received a merit increase he went from Grade 62, Step 1 (rate of pay $11,220.00) to Grade 62, Step 2 (rate of pay $11,712.00). Officer Alston's merit increase was an increase that only five out of the forty-seven deputies received.

(6) Officer Hollar was hired on April 4, 1980 as a patrol deputy. He was classified as a Grade 61, Step A (rate of pay $9,972.00 per year). On June 26, 1980 he went to Grade 62, Step 1 (rate of pay $11,220.00 per year) due to the department increment change. Officer Hollar had no previous experience with the Sheriff's Department prior to his employment as a patrol deputy.

(7) Officer Wallace was originally hired on February 7, 1978 in a position other than road deputy. When he was reclassified in December 1979 he went from Grade 59, Step 2 (rate of pay $9,552.00 per year) to Grade 61, Step 2 (rate of pay $10,392.00 per year). On February 29, 1980 he was promoted to detective. Thus, there are not any actual figures for Officer Wallace as a patrol deputy during the relevant time frame of June 1980 to September 1984. Prior to his promotion, Officer Wallace and Officer Alston were both paid at Grade 61, Step 2. On June 26, 1980 pursuant to an increment change Officer Alston went to Grade 62, Step 1. Presumably Officer Wallace would have received the same change to Grade 62, Step 1. The salary figures as a patrol deputy for Officer Wallace, however, are only a projection.

(8) In that Officers Alston, Privette, and Hollar and presumably Wallace were all paid at the same rate on June 26, 1980 the Court finds that as of June 1980 patrol deputies hired in 1980 were classified and paid according to Grade 62, Step 1 at a rate of pay of $11,220.00 per year, regardless of the officer's previous experience within the Sheriff's Department. The Court further finds that had the Plaintiff been hired for the patrol deputy position she applied for in June 1980 she would have been classified and paid, as was Officer Privette, according to Grade 62, Step 1 at a rate of pay of $11,220.00 per year.

(9) In 1981 there was an across-the-board increase with a step increase in the patrol deputy position. In 1982 there were not any pay increases. In July 1983 there was an across-the-board increase with no grade or step increase. There apparently were no further increases prior to September 1984.

(10) If the Plaintiff had been hired as a patrol deputy in June 1980 at Grade 62, Step 1 and had received all of the across-the-board increases and no merit increases she would have accrued the following amount of back pay:

$ 6,441.00 for 1980 (6/1—12/31)
$11,610.00 for 1981
$12,000.00 for 1982
$12,300.00 for 1983
$ 9,338.57 for 1984 (1/1—9/12)
$51,689.57 TOTAL

(11) If the Plaintiff had been hired as a patrol deputy in June 1980 at Grade 62, Step 1 and had received all of the across-the-board increases and one of the five merit increases awarded in 1980 she would have accrued the following amount in back pay:

$ 6,832.00 for 1980 (6/1—12/31)
$12,120.00 for 1981
$12,528.00 for 1982
$12,840.00 for 1983

$ 9,468.00 for 1984 (1/1—9/12)

$53,788.00 TOTAL

(12) The Plaintiff's interim earnings since June 1980 which are deductible under Section 706(g) of Title VII from the gross entitlement to back pay are as follows:

| 1980 | |
|---|---|
| Iredell County | $ 3,298.84 |
| **1981** | |
| Iredell County | $ 3,864.46 |
| Blackwelder Furniture | $ 3,867.70 |
| **1982** | |
| Blackwelder Furniture | $ 460.40 |
| Iredell Memorial Gardens | $ 62.81 |
| Carolina Pacific Knitwear | $ 704.00 |
| Fraternal Order of Police | $ 100.00 |
| **1983** | |
| Carolina Pacific Knitwear | $ 3,888.35 |
| Iredell County | $ 5,592.15 |
| **1984** | |
| Iredell County (through 9/12) | $ 8,019.00 |
| TOTAL | $29,857.71 |

(13) The net amount of back pay, if the Plaintiff had not received a merit increase is $21,831.86.

(14) The net amount of back pay if the Plaintiff had received the merit increase awarded to Officer Alston is $23,930.29.

(15) At the time of her discharge in 1981 the Plaintiff had accumulated 32.25 days of sick leave. When she was reinstated in June 1983 she was credited with the sick leave which she had already accumulated prior to her discharge. The Defendant, however, refused to credit her with the additional sick leave which she would have accumulated had she continued to be employed from April 1981 to June 1983.

The sick leave policy of the County provides that employees accrue sick leave at the rate of twelve working days per full calendar year of service. This sick leave continues to accrue without limit if not utilized. Under this policy, the Plaintiff would have accrued twenty-six sick leave days during the period between her 1981 discharge and her 1983 reinstatement. The Court, therefore, finds that the Plaintiff should be credited with the twenty-six additional sick leave days.

(16) The Defendant concedes that the Plaintiff is entitled to credit for the period between 1981 and 1983 in the North Carolina Local Governmental Employees' Retirement System. Upon her reinstatement, however, she was not given any credit. Accordingly, the Plaintiff is entitled to an adjustment in her retirement account, for pension and retirement purposes, for the two year period between 1981 and 1983 when she was illegally denied the dispatcher position.

Such relief will necessitate computations by the State Retirement System to determine the precise amount of contributions that will be required, both by the County and by the Plaintiff in order to credit her properly with her pension account. Accordingly, the State Retirement System should be directed to make the appropriate adjustments and computations and the Plaintiff and the Defendant should be ordered to pay their respective amount of contributions determined by the State Retirement System.

(17) As to the issue of prejudgment interest, the Court finds in its discretion in light of the findings of fact and conclusions of law entered in the Memorandum and Order of May 24, 1983 that this is a case in which prejudgment interest should be awarded to make the Plaintiff whole. *E.E. O.C. v. Liggett & Myers, Inc.,* 690 F.2d 1072, 1074 (4th Cir.1982). The Defendant's only argument against allowing prejudgment interest is that the Plaintiff has no right to prejudgment interest because the Plaintiff contributed to the delay in securing relief because she did not apply for, or because she let it be known that she did not want, a patrol deputy position.

The Defendant's argument is based on a factually incorrect premise. After a full trial on the merits the Court found that in June 1980 the Plaintiff requested a promotion to a then available patrol deputy position. The Defendant similarly contended the Plaintiff was not interested in road deputy work, primarily citing statements allegedly made to members of the press. The Court found the Defendant's reliance upon these subsequent statements to be pretextual. *Memorandum and Order,* pp.

5, 17, May 24, 1983. The Defendant moved the Court to amend the finding as not supported by the evidence. The Court denied the motion. The Defendant appealed this finding as not supported by the evidence and the Fourth Circuit Court of Appeals denied the Defendant's appeal, upheld the finding and increased the Plaintiff's remedies. The Defendant's argument against prejudgment interest is thus factually without merit and redundant.

(18) The National Labor Relation Board Rates for the relevant time are as follows:

| | |
|---|---|
| June 1, 1980 to December 31, 1981 | 12% |
| January 1, 1982 to December 31, 1982 | 20% |
| January 1, 1983 to December 31, 1983 | 16% |
| January 1, 1984 to December 31, 1984 | 11% |

## CONCLUSIONS OF LAW

 (1) The Court concludes that the Plaintiff is entitled to gross back pay in the amount of $51,689.57. In making this determination, the Court finds that the records of Officer Privette present a comparable male employee. It further is significant that all patrol deputies hired in 1980 were classified as Grade 62, Step 1, on June 26, 1980. The Court declines to rely solely on Officer Alston's pay records in that there were only five out of forty-seven employees receiving this merit increase. Although the Plaintiff is entitled to normal salary increases, in the instant situation a comparison to a merit increase appears highly speculative and is not equitable because it would in effect "reward the plaintiff and penalize the employer for the extraordinary diligence and motivation" of Officer Alston. *See, E.E.O.C. v. Liggett & Myers, Inc.*, 690 F.2d 1072, 1076–77 n. 3 (4th Cir.1982), *citing, Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 160–61 (7th Cir.1981). (In ADEA claim, the Court rejected the argument that the Plaintiff should receive the full difference between her actual wages and the wages of the highest paid worker.)

(2) In that the Plaintiff's interim earnings during the relevant time period were $29,857.71, pursuant to 42 U.S.C. § 706(g) the Plaintiff is entitled to back pay in the sum of $21,831.86 from the Defendants.

(3) The Plaintiff is entitled to be credited with twenty-six sick leave days and is entitled to an adjustment in her retirement account for the two year period between 1981 and 1983 in which she was illegally denied the dispatcher position.

(4) The Defendant, without citing any legal authority, contends the amount they have to pay in back pay should be reduced by the amount of the Plaintiff's contribution to her retirement plan, state and federal income tax withholdings, as well as by deductions for social security. To order the Defendant to pay less because of the Plaintiff's tax liability, however, would give the Defendant a benefit it has not earned. The Defendant had the entire use of the money during the litigation. The Defendant did not withhold or pay any taxes on the Plaintiff's back pay during the litigation. If the back pay award had been paid into the Clerk's Registry during the appeal the Plaintiff would have earned interest on the entire sum. Further the Plaintiff's tax liability is a matter between the Plaintiff and the respective taxing authority. The calculation of the Plaintiff's taxes would presumably included allowances for exemptions, deductions etc. that the Plaintiff will elect to take based on her particular situation and may not consist of the standard deductions and exemptions. Finally, since the Plaintiff is receiving her back pay in a lump sum rather than over the years she may incur a higher tax liability. Accordingly, the amount the Defendant has to pay the Plaintiff in back pay, including the calculation of interest, should not be reduced by deductions for the retirement plan, the federal and state income taxes, and the FICA taxes.

(5) Any finding of fact which is determined also to be a conclusion of law is so deemed, and any conclusion of law which is determined also to be a finding of fact is so deemed.

Accordingly, pursuant to the findings of fact and conclusions of law set forth above, IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that:

(1) The Plaintiff is entitled to back pay in the sum of $21,831.86 and prejudgment

interest thereon at a rate of 12% from June 1980 to December 31, 1981, 20% from January 1, 1982 to December 31, 1982, 16% from January 1, 1983 to December 31, 1983 and 11% from January 1, 1984 to September 12, 1984 and interest on the total back pay and prejudgment interest from this date at the rate of 8.57% per annum until paid.

(2) The Plaintiff is to be credited with twenty-six sick leave days.

(3) The Plaintiff's pension account in the State Retirement System is to be adjusted to credit her with employment between 1981 to 1983 when she was illegally denied the dispatcher position.

(4) North Carolina Local Governmental Employees' Retirement System is to make the necessary computations and adjustments for crediting the Plaintiff's retirement account.

(5) The Defendant and the Plaintiff are to pay their respective amounts of contributions to the State Retirement System as determined by the North Carolina Local Governmental Employees' Retirement System.