Jeanne Brookhart **REECE**, Plaintiff,

v.

**MARTIN MARIETTA TECHNOLOGIES, INC.,** Defendant.

**Civil No. AMD 94–1747.**

United States District Court,
D. Maryland.

Dec. 28, 1995.

Scott E. Snyder, Anderson & Corrie, Fairfax, VA, for plaintiff.

Russell H. Gardner, Piper & Marbury, Baltimore, MD, for defendant.

### MEMORANDUM OPINION

DAVIS, District Judge.

## I. INTRODUCTION

Plaintiff, Jeanne Brookhart Reece, alleging that she was denied pay equal to that of similarly situated males in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"), that she was constructively discharged in violation of state common law, and that she suffered disparate treatment based on sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5 ("Title VII"), instituted this action against defendant, Martin Marietta Technologies, Inc., ("Martin Marietta"). Presently before this Court is defendant's Motion for Summary Judgment on the EPA and Title VII claims.[1] The parties have fully briefed the issues presented, and the Court held a hearing on the motion on December 8, 1995. For the reasons set forth herein, the Court shall grant defendant's motion as to all remaining claims.

## II. SUMMARY JUDGMENT

A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indust. Co. v.*

---

1. On February 7, 1995, the Court granted defendant's motion to dismiss the constructive discharge claim.

*Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Mere speculation by the non-movant cannot stave off a properly supported motion for summary judgment. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265; *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Shealy*, 929 F.2d at 1012. Furthermore, all permissible inferences must be drawn in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587–88, 106 S.Ct. at 1356. A careful review of the voluminous record in this case establishes that there is no *genuine* dispute of material fact.

## III. FACTS

Plaintiff began her employment with defendant in November 1987 as a clerk in the payroll department of the Data Systems division of Martin Marietta. The Data Systems payroll department prepared payroll for several divisions of Martin Marietta, including the Aero & Naval Systems division ("A & NS"). The A & NS division, however, handled its timekeeping operations in-house.

In January 1990, A & NS terminated its arrangement with Data Systems and brought its payroll accounting operations in-house, to be administered in tandem with its time-keeping department. Plaintiff and other Data Systems payroll department employees were transferred to the A & NS payroll department. Robert Smith, the former manager of the Data Systems payroll department, joined A & NS to manage the payroll and timekeeping departments. Smith became "Chief, Payroll/Timekeeping," with a job classification at salary grade 48. Smith reported directly to John McManus, the Chief of Treasury. Joseph Stec, Jr., continued as supervisor of the A & NS timekeeping department. Stec was classified as "Associate Analyst" at salary grade 41. Plaintiff continued to perform payroll-related tasks as "Accountant II," a non-exempt clerical position at salary grade 36.[2]

In September 1992, A & NS reorganized the payroll and timekeeping departments and eliminated the position of Chief, Payroll/Timekeeping (Smith's job). The position of payroll supervisor was created and plaintiff was promoted to that position as "Specialist," an exempt supervisory position at salary grade 43. As payroll supervisor, plaintiff's duties involved administering divisional payroll, supervising three payroll clerks, and overseeing the daily activities of the payroll department. Stec remained as supervisor of the timekeeping department. Both plaintiff and Stec reported to John McManus, Chief of Treasury at A & NS, to whom Smith had reported.

During this period, A & NS's work force had been declining steadily, resulting in management restructuring and job eliminations.[3] In late December 1993, or early January 1994, A & NS decided to consolidate its payroll and timekeeping departments into one unit. Under the A & NS reorganization plan, plaintiff's supervisory position as payroll supervisor would be eliminated, as would the timekeeping supervisor position. In their place, A & NS would create a new

---

**2.** A & NS compensation policy is based on a two-track system: classification and pay rate. Every position is assigned a classification. This assignment is based on the level of skill, judgment, and responsibility required to fulfill the duties of that position. Pay rate within a classification depends on the employee's length of time in a particular classification and the employee's performance rating at a position.

**3.** Starting in 1988, A & NS experienced a "precipitous decline" in the size of its work force, caused in part by the completion of several contracts for the military. Its work force peaked at 5,450 employees in September 1988, declined steadily to 2,400 employees in January 1993 and then to 1,494 employees on January 31, 1994.

supervisory position, known as "Payroll Lead," which would be responsible for the daily supervision of the newly consolidated unit and would report to McManus. "Payroll Lead" was classified as "Senior Specialist, Finance," at salary grade 45.

In January 1994, plaintiff was offered a promotion and appointment to "Payroll Lead." Plaintiff rejected the promotion offer and subsequently terminated her employment with Martin Marietta on March 10, 1994. Thereafter, the "Payroll Lead" position was offered to, and accepted by, Clifford Harris, a male employee.

Prior to plaintiff's resignation, on January 24, 1994, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging gender and employment discrimination. As a result of EEOC's anticipated inability to complete its investigation within the prescribed statutory period, EEOC issued plaintiff a Notice of Right to Sue on March 21, 1995. Plaintiff instituted this action under the EPA and Title VII, and she included a pendent state claim of constructive discharge. In its Answer to plaintiff's Complaint, defendant, *inter alia,* asserted the statutory affirmative defense that the alleged salary differential was attributable to "factors other than sex." *See* Fed.R.Civ.Pro. 8(c); *see also* 29 U.S.C. § 206(d)(1). Defendant has now moved for summary judgment on the Equal Pay Act and Title VII claims, the only remaining claims.

## IV. LEGAL STANDARDS UNDER THE EQUAL PAY ACT AND TITLE VII

■ Plaintiff has alleged that she was paid less than similarly situated males because of her sex in violation of both the Equal Pay Act and Title VII. Although there are some differences between the sex discrimination provisions of the Equal Pay Act and Title VII, courts have construed the statutes harmoniously.[4] *See* 42 U.S.C. 2000e-2(a)(1); *see generally Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455 (4th Cir.1989) (Title VII discharge and retaliation claims); *Brewster v. Barnes,* 788 F.2d 985, 991 (4th Cir.1986) (EPA claim sustained; Title VII claim failed for lack of showing discriminatory intent in paying lower wages to female plaintiff). ·

■ Here, plaintiff's burden is to establish a *prima facie* case by showing that "(1) her employer [paid] her a lower wage than a male counterpart (2) for 'equal work on jobs the performance of which requires equal skill, effort and responsibility'", *Fowler v. Land Management Groupe, Inc.,* 978 F.2d 158, 161 (4th Cir.1992).[5] In comparing wage rates by gender, "[t]he comparison must be made factor by factor with [a particular] male comparator." *Strag v. Board of Trustees,* 55 F.3d 943, 948 (4th Cir.1995); *see also EEOC v. Liggett & Myers, Inc.,* 690 F.2d 1072, 1076-78 (4th Cir.1985) (plaintiff may not compare herself to a hypothetical male). "[R]andom comparisons demonstrating disparities in treatment [alone] may be insufficient to draw a prima facie inference of discrimination." *Id.*

Establishment of the *prima facie* case requires proof that the work performed by a female employee is "substantially equal" to the work performed by a higher paid male.

---

**4.** The Supreme Court has suggested that courts should be wary of granting summary judgment motions against Title VII claimants because a party's intent is often the crucial element in such claims. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 8, 101 S.Ct. 1089, n. 8, 67 L.Ed.2d 207 (1981). Summary judgment is appropriate even on Title VII cases, however, where any factual dispute does not rise to the level of a "genuine issue of material facts." *See Boarman v. Sullivan,* 769 F.Supp. 904, 906 (D.Md.1991) ("traditional precepts of summary judgment may apply, except where the evidence presents a genuine issue of motive"). Summary judgment should also be granted when a party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

**5.** Under Title VII, a prima facie case of sex discrimination requires showing a connection between sex and the adverse employment decision. The plaintiff may establish a prima facie case of wage discrimination by demonstrating that she is female, and that the job she occupied was similar to higher paying jobs occupied by males. The plaintiff also has the additional burden of proving intentional discrimination. *Brinkley-Obu v. Hughes Training, Inc.,* 36 F.3d 336, 343 (4th Cir.1994).

*Cf.* 29 C.F.R. § 1620.13(a). In *Hassman v. Valley Motors, Inc.,* 790 F.Supp. 564 (D.Md. 1992), for example, the court observed:

> The touchstone of the equal work analysis is whether the work is "substantially equal." If the jobs to be compared have a "common core" of tasks, i.e., significant portions of the two jobs are identical, the inquiry turns on whether the differing or additional tasks require greater skill or responsibility. Skill is a function of experience, training, education, and ability, and is measured in terms of the "performance requirements" of the job. Responsibility measures, among other things, the degree of "accountability" to higher-ups.

*Id.* at 567–68 (citations omitted); *see also Barnes,* 788 F.2d at 991.

■■■■ "Under the Equal Pay Act, the plaintiff creates a presumption of discrimination when she establishes a *prima facie* case." *Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 343 (4th Cir.1994); *Strag,* 55 F.3d at 948–950. The burden shifts to the employer to prove, by a preponderance of the evidence, that the differential in wages is justified under one of four statutory exceptions: (1) a seniority system; (2) a merit system; (3) a system which measures earning by quantity or quality of production; or (4) any factor other than sex. 29 U.S.C. § 206(d)(1)(i)–(iv). The broad scope of the fourth statutory exception encompasses "shift differentials, restrictions on or differences based on time of day worked, hours of work, lifting or moving heavy objects, differences based on experience, training, or ability...." *Equal Employment Opportunity Commission v. Aetna Ins. Co.,* 616 F.2d 719, 725 (4th Cir.1980) (emphasis omitted) (quoting H.R.Rep. No. 309, 88th Cong., 1st Sess., 3 U.S.Code Cong. & Admin.News 1963, p. 687.) If the employer is unable to meet this burden of proving one of the defenses, then the employer is liable for sexual discrimination in pay. *Strag,* 55 F.3d at 948; *Brinkley–Obu,* 36 F.3d at 344. "[D]irect evidence of sexual discrimination is not required to

counter the contention that a pay disparity is justified." *Fowler,* 978 F.2d at 161.

■■■■ Under Title VII, in contrast, if the employer successfully articulates an affirmative defense or a "non-discriminatory" reason for the salary differential, the female employee has the burden to establish that the employer's non-discriminatory reason is a pretext for discrimination. *Id.* Title VII requires a showing of discriminatory intent by direct or indirect evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Williams,* 871 F.2d at 455; *Barnes,* 788 F.2d at 991.[6]

## V. DISCUSSION

### A. Equal Pay Act Claim/Title VII Claim: Wages

■■■■ In the instant case, plaintiff contends that Smith, the former Chief of payroll/timekeeping, is her predecessor and that Harris, the "Payroll Lead," is her successor for the purposes of comparing salaries and duties, and in establishing a *prima facie* case for unequal pay. Plaintiff argues that, as a result of the reorganization in A & NS, she was compelled to perform the duties and assume the responsibilities Smith carried out before his termination. Plaintiff claims that she

> "managed the operation of the Payroll and Timekeeping Departments, all of the planning, the schedules, all the controls, [and] the report definitions and requirements, attended all of the user group meetings; documented, corrected procedures and follow-up, did the reviews of [the] staff, [and] attended the staff meetings with upper management."

Pl.'s Dep. at 539.

Plaintiff argues that, although she performed these duties after Smith departed, Smith's salary was twice her salary, and Smith's salary grade was three grades higher

6. As a result of the different burdens under Title VII and the Equal Pay Act, "[i]t is possible that a plaintiff could fail to meet [her] burden of proving a Title VII violation, and at the same time the employer could fail to carry its burden of proving an affirmative defense under the Equal Pay Act." *Brinkley–Obu,* 36 F.3d at 344 n. 17 (citing *Fallon v. Illinois,* 882 F.2d 1206, 1217 (7th Cir.1989)).

than her grade.[7] Plaintiff believes that her salary grade, which was 43, should have been at least a grade 45.

Plaintiff also contends that Harris, the "Payroll Lead," is her "successor" for the purposes of EPA analysis. Plaintiff argues that although she never held the title of "Payroll Lead," she performed all the tasks associated with that position, and that she actually trained Harris in the operation of the payroll and timekeeping departments before the effective date of her resignation. Plaintiff contends that the incompetence of Stec, the supervisor of timekeeping, Stec's subsequent termination in June 1993, and the under-staffing of the payroll/timekeeping unit, forced her to perform all of the duties that ultimately became the responsibility of the "Payroll Lead." Plaintiff thus argues that, despite the constant reorganization of A & NS, she performed more duties than her position as payroll supervisor facially required.

Defendant disputes vigorously plaintiff's characterizations. Defendant contends that plaintiff has not properly identified a male counterpart with whom to compare her salary. Defendant further contends that, if there exists a male counterpart, plaintiff is still unable to establish a *prima facie* case of unequal pay because she did not perform a job that required skill, effort and responsibility similar to the jobs of her alleged counterparts. Additionally, defendant contends that any salary differential between plaintiff and her alleged male counterparts is based on "factors other than sex," namely experience and the evolving reorganization of the payroll and timekeeping functions. Viewing the facts in the light most favorable to plaintiff, this Court concludes that plaintiff has indeed failed to show that there exists a genuine dispute whether Harris or Smith is her counterpart *and* similarly, she has failed to show that she performed "substantially equal" work. As a matter of law, plaintiff cannot

establish a *prima facie* case under the Equal Pay Act.

Plaintiff has failed to present to the Court specific, admissible evidence which suggests that Smith is a proper "male comparator," and that her duties were substantially equal in skill, effort, and responsibility to that of Smith. *See Strag,* 55 F.3d at 950; *Soble v. University of Maryland,* 778 F.2d 164, 167 (4th Cir.1985); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (plaintiff must point to "significant probative evidence" and cannot rest on bare allegations in opposing a request for summary judgment). The uncontradicted evidence shows that Smith, at all relevant times, was plaintiff's *supervisor.* As Chief of payroll/timekeeping, Smith was assigned to manage the payroll and timekeeping departments, while plaintiff performed only clerical tasks associated with payroll. Upon Smith's termination, Smith's position was eliminated. Smith's duties were divided among the remaining employees: John McManus (Smith's prior supervisor) was assigned to manage the payroll and timekeeping departments of A & NS; Joseph Stec continued to supervise the timekeeping department; and plaintiff was promoted to the newly-created payroll supervisor position. This promotion placed plaintiff at a supervisory level similar to the timekeeping supervisor position occupied by Stec. Both plaintiff and Stec reported to McManus. Plaintiff did not succeed Smith as Chief of payroll/timekeeping. However, as a result of the promotion to payroll supervisor, plaintiff acquired additional responsibilities, such as supervising the payroll department and employees.[8]

A comparison between plaintiff's and Smith's Performance Appraisal Review ("PAR") reveals that they performed vastly different jobs in A & NS. In plaintiff's PAR prepared in September 1993, she described her primary job responsibilities as payroll supervisor as follows:

---

7. Immediately prior to his termination in 1992, Smith was classified at salary grade 48, earning $64,790.00 annually. Upon her promotion effective at about that time, plaintiff was classified at salary grade 43, earning 28,600.00 annually.

8. To the extent plaintiff contends that she was actually performing these duties before her actual promotion, she has failed to adduce specific evidence in support of her contentions.

Administer three divisional payrolls comprised of 2,480 employees located in seventeen states.

Supervise three payroll clerks and perform back-up duties as needed.

Audit payroll processing and IRS and state tax requirements.

Manage all payroll/benefits testing and conversion efforts.

Perform (as back-up) the printing, signing, sealing and bursting of all payroll checks and direct deposits for three divisions.

Implement office procedures and guidelines.

Design deduction forms and payroll report modifications.

Pl.'s Opp.Mot.Summ.J., Ex. G.

In Smith's last PAR prepared before his termination, he described his primary job responsibilities as follows:

Manage payroll/time control functions of MM [A & NS].

Supervise (6) employees engaged in compiling, recording, and processing payroll and attendance/labor for [A & NS], Chesapeake Park, MM laboratories.

Oversee compilation of W–2 earning and tax data required by [A & NS], MM laboratories and MM corporate offices as well as all other tax agencies.

Represent the "CAPR" payroll system for [A & NS], and MM laboratories as a part of the "CAPR" community at the quarterly meetings.

Def.'s Reply Mem., Ex. 4.[9]

Despite the absence of similar supervisory and timekeeping duties, plaintiff nevertheless maintains that she performed the duties of the payroll/timekeeping chief. She claims that she supervised timekeeping personnel, prepared staff evaluations, and managed the timekeeping functions. As proof of these contentions, plaintiff relies on her own assertions in the "supervisory competencies" section of her PAR, which provided that plaintiff "monitor[ed] the processing of the employees in timekeeping (not officially an area of my responsibility) and assist[ed] in implementing

valid verification and auditing procedures." Also, in plaintiff's memorandum in opposition to defendant's motion for summary judgment, plaintiff asserts that she was informed by unidentified persons in the Human Resources Department that she "was in charge of timekeeping and payroll functions" in A & NS. The Court finds plaintiff's "evidence," consisting of little more than her own self-serving assertions, insufficient as a matter of law to create a genuine dispute of material fact.

Smith's employment record at Martin Marietta speaks for itself. Smith had been an employee of Martin Marietta since 1956. From 1980 to January 1990, Smith was the manager of the payroll department of Data Systems. After being transferred to A & NS in 1990, he was assigned to manage the payroll and timekeeping departments of A & NS as Chief in salary grade 48. Plaintiff admitted at oral argument that based on Smith's experience and length of employment at Martin Marietta, she did not expect to receive Smith's salary or grade level. Instead, she argued that she should have been "at least" a salary grade 45. This argument is wholly unpersuasive on this record; as defendant argued at the hearing, most people believe they are generally underpaid. *See Strag*, 55 F.3d at 951 (holding that experience, reputation, and popularity are gender-neutral justifications sufficient to defeat an unequal pay claim). For all of these reasons, the Court concludes that plaintiff has failed to establish that Smith is her counterpart or that she and Smith performed substantially similar work at A & NS.

In any event, the record shows that defendant in fact made a job offer to plaintiff at salary grade 45. In January 1994, A & NS offered plaintiff a promotion to "Senior Specialist, Finance," at salary grade 45. Def.'s Mot.Summ.J., Ex. I. This promotion to "Payroll Lead" came with a 14% promotional salary increase, and a 1.5% merit-based increase. For reasons that are unclear to the Court, plaintiff rejected this promotion and decided to file suit alleging that she deserved

**9.** Admittedly, concepts such as "manage", "supervise", and "administer" can be slippery. It

was plaintiff's burden to make them less so, and she has not.

the same promotion she rejected.[10] Plaintiff argued at the hearing that she was "confused" as to the specifics of her potential promotion. This unsubstantiated contention is insufficient to create a dispute of fact precluding summary judgment.

 Plaintiff's contention that Harris, the "Payroll Lead," is her successor is similarly flawed. The undisputed facts show that plaintiff held the payroll supervisor position upon her resignation from A & NS, and that she rejected the promotion to "Payroll Lead," the position created to replace the payroll supervisor and the timekeeping supervisor positions. After plaintiff's resignation, A & NS did not hire another payroll supervisor. Rather, A & NS eliminated the payroll supervisor position and consolidated the payroll and timekeeping department, precisely as the A & NS reorganization plan indicated. Later (after plaintiff resigned), Harris was offered and accepted the "Payroll Lead" position, not the payroll supervisor position. Plaintiff was never "Payroll Lead," and therefore cannot plausibly argue that Harris is her successor.

The Court is fully mindful that job content, not job title or classification, is the focus of an unequal pay inquiry. *See* 29 C.F.R. § 1620.13(e); *see also Hassman,* 790 F.Supp. at 565; *Forsberg v. Pacific Northwest Bell Telephone Co.,* 840 F.2d 1409, 1414 (9th Cir. 1988). However, assuming that the Court

found that plaintiff appropriately identified Harris as her successor, plaintiff's contention would nevertheless fail for plaintiff has not provided the Court with even a scintilla of evidence to show that she and Harris performed similar duties. Moreover, if plaintiff had accepted the "Payroll Lead" position in January 1994, she would have received a salary greater than Harris received for the same work. Plaintiff was offered the "Payroll Lead" position as "Senior Specialist, Finance," with an annual salary of $33,334.00. Harris received an annual salary of $33,-150.00. Thus, plaintiff is unable to show that A & NS paid Harris a higher salary for equal work. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (noting trial courts have an "affirmative obligation" to prevent "facially unsupported claims" from preceding). The Court therefore concludes that plaintiff's contention that Harris is her successor under the EPA fails, and thus plaintiff is unable to establish a *prima facie* case for her unequal pay claims. Accordingly, the Court shall grant defendant's motion for summary judgment with respect to plaintiff's unequal pay claim.[11]

## B. Other Title VII Claims

 Under Title VII,[12] plaintiff alleges that she suffered gender discrimination from defendant's discriminatory employment practices, in addition to gender discrimination in pay.[13] A *prima facie* case of sex

---

10. At the hearing, it was revealed (and not disputed) that plaintiff may have resigned her position at A & NS as part of her effort to move to Northern Virginia with her then boyfriend, a former employee of Martin Marietta.

11. Because the Court finds that there is no genuine issue as to a material fact and that plaintiff as failed to establish a *prima facie* case, defendant does not yet have the burden of establishing the affirmative defense of a "factor other than sex," or a "legitimate, nondiscriminatory" reason for the salary differential between plaintiff and Smith or Harris.

12. Although both the Equal Pay Act and Title VII protect employees against sexual discrimination, Title VII is broader and affords an employee the opportunity to challenge other discriminatory practices. *Equal Employment, Etc. v. Aetna Ins. Co.,* 616 F.2d 719, 724 (4th Cir.1980); *see also County of Washington v. Gunther,* 452 U.S. 161, 178–81, 101 S.Ct. 2242, 2252–53, 68 L.Ed.2d 751

(1981) (holding that claims for sex-based wage discrimination can also be brought under Title VII even though no member of the opposite sex holds an equal but higher paying job).

13. In plaintiff's Complaint, the other discriminatory practices alleged include:

(1) creating a job with different title and description with a lower pay scale to be filled by a woman which requires a level of responsibility and work production equal to that of higher paying jobs held predominately by men;
(2) assigning work normally of higher classification to women in lower classifications without assigning a woman the rank and/or salary associated with such work, failing to maintain a promotion and transfer policy based on objective job-related criteria that are uniformly applied to men and women;
(3) ordering [plaintiff] not to speak·to the predominantly male managers unless spoken to;
(4) excluding her from management meetings;

discrimination under Title VII requires "showing a connection between sex and the adverse employment decision." *Brinkley–Obu*, 36 F.3d at 343. Although "the burden of establishing a *prima facie* case of disparate treatment is not onerous," *id.* (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)), plaintiff has failed to present any evidence that defendant engaged in discriminatory practices based on sex.[14] Accordingly, summary judgment shall be granted as to plaintiff's other Title VII claims.

## VI. CONCLUSION

Plaintiff's ostensible identification of Smith and Harris as her predecessor and successor, respectively, fails as a matter of fact and law. Moreover, plaintiff has failed to show that she performed duties substantially similar to that of her alleged counterparts. Accordingly, plaintiff is unable to establish a *prima facie* case under the Equal Pay Act. In addition, plaintiff has failed to make out a *prima facie* case of disparate treatment under Title VII. For these reasons, defendant's motion for summary judgment on the Equal Pay Act and Title VII claims shall be granted. A separate order shall be entered.

(5) failing to accord a female employee the rank, title, and recognition commensurate with their duties and responsibilities.
Pl.'s Compl., at ¶ 24.

**14.** Defendant argued that plaintiff's allegations that A & NS ordered her not to speak to male managers and excluded her from management meeting should be dismissed because they were not made the subject of an administrative charge of employment discrimination. In light of the Court's ruling, this argument is moot.