**Thurza STRAG, Plaintiff–Appellant,**

v.

**BOARD OF TRUSTEES, Craven Community College; Craven Community College, Defendants–Appellees (Two Cases).**

Nos. 94–2170, 94–2288.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1995.

Decided June 1, 1995.

**ARGUED:** David Peter Voerman, Voerman & Carroll, P.A., New Bern, NC, for appellant. William Joseph Austin, Jr., Ward & Smith, P.A., New Bern, NC, for appellees. **ON BRIEF:** S. McKinley Gray, III, Ward & Smith, P.A., and James R. Sugg and Elliot Zemek, Sumrell, Sugg, Carmichael & Ashton, P.A., New Bern, NC, for appellees.

Before MURNAGHAN and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.

Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge HAMILTON and Senior Judge SPROUSE joined.

## OPINION

MURNAGHAN, Circuit Judge:

On September 2, 1993, Appellant, Thurza Strag ("Strag") initiated an action against Appellee, Craven Community College (the "College"), under the Equal Pay Act, 29 U.S.C. § 206(d)(1), in the United States District Court for the Eastern District of North Carolina. Strag alleged that the substantial discrepancy between her salary and that of her selected male comparator, Linwood "Buddy" Swain ("Swain"), was based on gender differences, and thus violative of the Equal Pay Act.

After discovery, the College filed a motion for summary judgment, supported by 47 affidavits. On June 29, 1994, Strag filed a motion for an extension of time to respond to the College's motion for summary judgment. The district court denied the motion on the ground that any delay in discovery was due to Strag's own actions, and that extension was therefore unjustified. Strag accordingly filed a response to the College's summary judgment motion on July 5, 1994, and the College filed a reply brief on July 15, 1994.

Before the district court ruled on the motion for summary judgment, Strag filed, on July 27, 1994, a "Supplemental Brief in Support of Plaintiff's Response," and an "Argument Incorporating Material Subject to Consent Protective Order." Two days later, the College filed an objection to the supplemental filings on the ground that the filings were not authorized by any procedural rule or court order, and that they defied the district court's previous order denying Strag's motion for an extension of time. On August 11, 1994, the district court struck Strag's supplemental filings and granted summary judgment in favor of the College. The district court also entered an order asking Strag to show cause why she should not be sanctioned for the unauthorized filings. On September 6, 1994, the court entered an order stating that Strag had failed to show cause why sanctions should not be imposed, and on September 26, awarded the College $2,085 in attorneys' fees.

On September 7, 1994, Strag filed a notice of appeal from the district court's order granting summary judgment to the College. On October 5, 1994, Strag filed a notice of appeal from the Court's award of attorneys' fees. The appeals were consolidated for briefing on October 12, 1994.

*Factual Background*

The instant action was brought by Strag pursuant to the Equal Pay Act, 29 U.S.C. § 206(d)(1), against Craven Community College. In her complaint, filed in the United States District Court for the Eastern District of North Carolina, Strag alleged that she was paid a salary substantially lower than that paid to her selected job comparator, a male biology instructor named Linwood "Buddy" Swain, based on her gender. Strag had been employed by the College as a mathematics instructor since September 1, 1987.

Instructors are paid by the College according to the College's Salary Plan. Instructors are usually employed "on scale," which means that their salaries are determined by a formula that takes into account a base salary, educational status, and years of work experience. The College's Salary Plan, however, also contains a "Special Salary Designation," which allows the College to employ an individual with highly exceptional qualifications at a salary above the usual "on scale" calculation. The provision allows the College to go "off scale" when it cannot obtain an exceptionally qualified teacher's services with an ordinary "on scale" salary.

Both Strag and Swain possessed masters degrees when they were hired by the College in 1987. Strag's starting salary at the College was $16,200, a somewhat lower wage than she earned at her prior position as a teacher at the East Carolina University, where she had earned $17,220 a year. Strag stated in her deposition that she took the "on scale" salary at the College, despite that small pay cut, because she did not want to continue making a one hundred-mile-a-day commute from her home to East Carolina University. Swain's starting salary at the College, by contrast, was $33,000, a slightly higher salary than the $28,931 he had earned at his prior job as a high school biology teacher at the New Bern High School. If Swain had continued as a teacher at the New Bern High School for the 1987–88 school year, his salary would have exceeded $30,000.

At the time that both Swain and Strag were hired by the College, Swain was very well-known in the County, and was tenured in the public schools by virtue of his years of service. Indeed, as of 1987, Swain had twenty-four continuous years of teaching experience, the last twenty at the New Bern High School. Strag, by contrast, had only nine years of teaching experience at the college level. Swain had established an excellent reputation by the time that he applied for a job with the College. For example, Swain was honored as the Outstanding Biology Teacher in the State of North Carolina in 1971 by the National Association of Biology Teachers, and was well known in the community for his innovative teaching methods. Indeed, many of his supporters, students, and fellow faculty members submitted affidavits in support of the College's motion for summary judgment stating that Swain's skills as a teacher were extraordinary, and were in fact comparable to, if not better than, the skills of university teachers.

The hiring of instructors at the College generally takes place pursuant to a standardized procedure developed in accordance with the affirmative action plan developed by the College. Specifically, the College advertises vacancies in full-time faculty positions by public announcement, and allows thirty days for the job applicants to submit applications. In the spring of 1987, the College published a notice of a job opening for a biology teacher. Buddy Swain became aware of the opening, and contacted Dr. Steve Redd, the Dean of the College. At that time, Swain expressed to Redd that he would not accept a position with the College for a pay lower than what he would have received at New Bern High School for the 1987–88 school year, a salary of at least $30,000. It thus became clear to the College that it would have to invoke its "Special Salary Provision" if it wished to hire Swain.

The College's Special Salary Provision provides that the College, on certain occasions, can waive the "on scale" Salary Plan salary in order to hire individuals with highly exceptional qualifications. In particular, the Special Provision states:

> On rare occasions, it may be necessary for the College to seek or retain an employee with highly exceptional qualifications. In these extreme cases, the salary plan may not allow the College to pursue its objective to employ on a competitive basis. In these instances, the president may grant permission to waive the provisions of the salary plan. Such arrangements, including actual salary, would be subject to affirmative recommendation and approval by the College President and Chairman of the College Board of Trustees. This will be documented by memorandum and signatures to the appropriate department head.

The Special Provision, however, contained no guidelines as to how a special "off scale" salary would be set.

Pursuant to the Special Salary Provision, the College offered Swain a starting annual salary of $33,000. Swain accepted the offer, and began working for the College in September of 1987. Dr. Redd stated in his deposition that the decision to hire Swain was based on his excellent reputation, and on the hope that having Swain on the faculty might help the College recruit more students. At the time he was hired, Swain was therefore paid much more than most teachers at the College, including Jonathan Pharr, the Chairperson of the Science Department.

On September 2, 1993, Strag filed a complaint in the United States District Court for the Eastern District of North Carolina under the Equal Pay Act, 29 U.S.C. § 206(d)(1), seeking back pay and injunctive relief. Strag selected Swain as her sole job "comparator" for purposes of her claim. The College answered her complaint, defending on the ground that Strag and Swain were not engaged in work that required similar skill, effort, or responsibility, and that the disparity between their salaries was thus justified on the ground that Swain was an exceptionally qualified instructor and that he had the additional responsibility of teaching lab classes. The College put forth evidence that since joining the faculty, Swain had taught biology lecture classes, biology labs, and independent study classes, as well as general biology courses to students enrolled in the North Carolina Wesleyan College program at the College. Moreover, Swain had several times instructed other faculty at the College in his unique, multimedia approach to teaching biology for which he had become well known.

After extensive discovery, the College filed a motion for summary judgment, supported by 47 affidavits and supplementary materials. On June 29, 1994, Strag filed a motion for an extension of time to respond to the motion for summary judgment. The district court denied the motion on the ground that any delay in discovery was caused by Strag. Strag accordingly filed a response to the College's summary judgment motion on July 5, 1994, and the College filed a reply brief on July 15, 1994.

Before the district court ruled on the motion for summary judgment, Strag filed, on July 27, 1994, a "Supplemental Brief in Support of Plaintiff's Response," and an "Argument Incorporating Material Subject to Consent Protective Order." Two days later, the College filed an objection to the supplemental filings on the ground that the filings were not authorized by any procedural rule or court order, and that the filings defied the court's previous order denying Strag's motion for extension of time. On August 11, 1994, the district court struck Strag's supplemental filings from the record and granted summary judgment in favor of the College. The district court also entered an order asking Strag to show cause why she should not be sanctioned for the unauthorized filings. On September 6, 1994, the court entered an order finding that Strag had failed to show cause why sanctions should not be imposed upon her, and accordingly awarded the College the $2,085 in attorneys' fees that it had incurred in responding to Strag's unauthorized supplemental filings.

On September 7, 1994, Strag filed a notice of appeal from the district court's order of summary judgment. On October 5, 1994, Strag filed a notice of appeal from the Court's September 6th order awarding attorneys' fees. The appeals were consolidated for briefing on October 12, 1994.

### I. *Grant of Summary Judgment To the College*

Strag first contends, on appeal, that the district court erred in granting summary judgment to the College, arguing that the district court "improperly invaded the province of the jury by essentially making findings of fact in favor of the College." The College argues, in response, that summary judgment was appropriately granted because (1) Swain was not a proper "comparator" for Strag's Equal Pay Act claim, and (2) the wage differential between Strag and Swain was based on factors other than gender, and was thus not actionable under the Equal Pay Act. Because Strag failed to put forth a proper *prima facie* case under the Equal Pay Act, and because the College sufficiently bore its burden of setting forth convincing gender-

neutral justifications for the salary disparity between Swain and Strag, we affirm.

The Equal Pay Act provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment *for equal work on jobs the performance of which requires equal skill, effort, and responsibility,* and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) *a differential based on any other factor other than sex....*

29 U.S.C. § 206(d)(1) (emphasis added).

This Court has held that in order to establish a *prima facie* case under the Equal Pay Act, the plaintiff bears the burden of showing that she (1) receives lower pay than a male co-employee (2) for performing work substantially equal in skill, effort, and responsibility under similar working conditions. The comparison must be made "factor by factor with the male comparator." *Houck v. Virginia Polytechnic Institute,* 10 F.3d 204, 206 (4th Cir.1993). Additionally, the plaintiff must identify a particular male "comparator" for purposes of the inquiry, and may not compare herself to a hypothetical or "composite" male. *Id.* This Court has held, moreover, albeit in dicta, that, in setting forth a *prima facie* case,

isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a *prima facie* inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to *the entire relevant group of employees.*

*Id.* at 206–07 (emphasis added).

■ Once a plaintiff has sufficiently established a *prima facie* case of salary discrimination against her employer under the Equal Pay Act, the burden then shifts to the employer to prove, by a preponderance of evidence, that the pay differential is justified by the existence of one of the four statutory exceptions set forth in § 206(d)(1): (1) a seniority system, (2) a merit system, (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. *Id.* at 207. *See also Fowler v. Land Management Groupe, Inc.,* 978 F.2d 158, 161 (4th Cir. 1992). If this burden is successfully carried by the employer, the plaintiff's claim must fail unless the plaintiff can satisfactorily rebut the defendant's evidence.

In *Soble v. University of Maryland,* 778 F.2d 164 (4th Cir.1985), this Court addressed the first step in bringing an Equal Pay Act action—establishing a *prima facie* claim—in a case that presented itself in much the same procedural posture as the instant case. In *Soble,* the district court had granted summary judgment to the University of Maryland in a case in which Soble, a female assistant professor, brought an action against the University under the Equal Pay Act because she was denied a salary equal to that paid to male faculty members who also held the rank of assistant professor at the University. 778 F.2d at 167. In affirming the grant of summary judgment in favor of the University, we held that Soble had failed to establish a *prima facie* case because, although she demonstrated the existence of a salary disparity, she failed for three reasons to show that she performed work substantially equal in skill, effort, and responsibility to her male comparators. *Id.* First, the Court found that Soble, by comparing her salary with salaries of teachers in other departments, failed to make an appropriate wage comparison for the purpose of establishing a *prima facie* case under the Equal Pay Act; in particular, the Court found that the other departments in the university required distinctive skills, thus "foreclosing any comparison Soble might make." *Id.* Second, the Court, in comparing Soble's skills to that of other assistant professors in her own department, found that she, unlike the other professors, did not hold a degree in dentistry, and instead held degrees only in sociology and social work; thus, Soble lacked a proper basis on which to make a salary comparison. *Id.* Finally, the Court held that

the only other non-dentist in Soble's department, a male, had a masters in business administration, taught dental management, and carried a considerably heavier teaching load than did Soble. *Id.* Accordingly, the Court, finding that Soble could not "rest on the bare allegation in her complaint that she is receiving lower pay for work comparable to that performed by male members of the dental faculty," found that a *prima facie* case was not properly established. *Id.* Indeed, the Court affirmed the grant of summary judgment in favor of the University on the ground that even viewing the evidence in the light most favorable to Soble, there existed no genuine issue of material fact suggesting that the salary differential in that case was based on gender discrimination. *Id.*

In *Equal Employment Opportunity Commission v. Aetna Insurance Co.*, 616 F.2d 719 (4th Cir.1980), we addressed the second prong of a court's inquiry under the Equal Pay Act—*i.e.*, even if a *prima facie* case is sufficiently set forth, whether the defendant has properly shown by a preponderance of evidence that the pay differential is motivated by any factor other than sex. In the case, a female insurance writer claimed that she was paid less than a male co-employee because of gender discrimination. 616 F.2d at 720. This Court, in finding that the district court had correctly held that the salary differential was based on a factor other than sex, described the scope of the four statutory "exceptions" to the Equal Pay Act, in particular addressing the most general exception for salary differentials based on any "other factor other than sex":

> Three specific exceptions and one broad general exception are [ ] listed. It is the intent of this committee that any discrimination based upon any of these exceptions shall be exempted from the operation of this statute. As it is impossible to list each and every exception, the broad general exclusion has been also included. *Thus, among other things, shift differentials, restrictions on or differences based on time of day worked, hours of work, lifting or moving heavy objects, differences based on experience, training, or ability would also be excluded.*

*Id.* at 725 (emphasis in original), *quoting* H.R.Rep. No. 309, 88th Cong., 1st Sess. 3, U.S.Code Cong. & Admin.News 1963, p. 687. Under this analysis, the Court found that the differential compensation system in that case was sufficiently based on factors other than sex—in particular, experience and background—such that an Equal Pay Act violation was not made out. *Id.* at 726. Specifically, the Court stated:

> If the record were barren of substantial justification or concrete standards for hiring [the male comparator], the argument might be entitled to consideration—but the record amply supports the conclusion of the district court that the decision to hire [the male comparator] rested on a more solid foundation than mere subjectivity. Aetna needed an experienced casualty underwriter to fill the void left by Garrett, but more importantly, it needed an agent to expand its business in the commercial casualty field. [The male comparator] had a strong background in the commercial casualty area; he had supervisory experience; and he demonstrated in his interview that he had the personality traits to succeed as an underwriter and later as a supervisor and a manager. *An element of subjectivity is essentially inevitable in employment decisions; provided that there are demonstrable reasons for the decision, unrelated to sex, subjectivity is permissible.*

*Id.* (emphasis added). *See also Ritter v. Mount St. Mary's College*, 814 F.2d 986, 993 (4th Cir.1987), *cert. denied*, 484 U.S. 913, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987) (finding that a difference in qualifications between the plaintiff and her male comparator can constitute a "factor other than sex" for the purpose of showing that a particular salary difference is not actionable under the Equal Pay Act); *cf. Brewster v. Barnes*, 788 F.2d 985, 992 (4th Cir.1986) (finding that the defendants could not show that the wage differential was due to a factor other than sex where the defendants never attempted to determine if the plaintiff was eligible for a comparable wage to that of her comparator).

In the instant case, the district court awarded summary judgment to the College

on the ground that there existed no genuine issue of material fact that the salary discrepancy between Strag and Swain was based on gender discrimination. In particular, the district court found that: (1) Strag failed properly to set forth a *prima facie* case, and (2) even if a *prima facie* case were established, the College sufficiently demonstrated that the salary differential was justified by gender-neutral factors. Several considerations support our affirmance of the district court's grant of summary judgment in favor of the College.

■■■ First, the case law described above makes clear that, in order for a plaintiff initially to establish a *prima facie* case under the Equal Pay Act, she must show not only that she is being paid lower wages than her male comparator, but also that she is performing work substantially equal in skill, effort and responsibility to her comparator under similar working conditions; *i.e.*, the male job comparator must be properly selected. In *Soble, supra,* for example, this Court held that a male professor hired to teach in a department other than the one by which the plaintiff was employed, did not constitute a proper male comparator because different departments in universities require distinctive skills that foreclose any definitive comparison for purposes of the Equal Pay Act. Under the same rationale, Strag's choice of Swain as a male comparator is improper in the instant case because: (1) Swain is employed by the Biology department of the College, while Strag is employed by the Mathematics department, two departments requiring different skills and responsibilities, and (2) as noted in the affidavits supporting the College's motion for summary judgment, Swain has more responsibilities than does Strag because he not only teaches normal lecture classes, but also instructs lab classes which require extra preparation. In particular, Swain is responsible for preparing for extra classes, supervising lab assistants, and writing and grading extra exams; moreover, lab classes are generally longer than usual lecture classes. Additionally, the record demonstrates clearly that Swain is the only full-time instructor for several science courses, including biology, botany, zoology and genetics, while Strag shares responsibility with other math teachers for the courses she teaches, and does not teach many of the advanced math courses. Strag, therefore, did not put forth a sufficient *prima facie* case under the Equal Pay Act because she failed to identify an appropriate comparator in her own department against whom her starting salary could be properly compared by the district court. As stated in *Soble, supra,* an Equal Pay Act plaintiff "cannot rest on the bare allegation" that she is receiving lower pay for equal work; she must also show that the comparison she is making is an appropriate one. *Soble,* 778 F.2d at 167. In the instant case, Strag failed to make a proper comparison, and thus did no more than prove that she and Swain are paid different salaries. That, on its own, is not actionable under the Equal Pay Act.

Second, this Court has recently suggested, albeit in dicta, that "isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a *prima facie* inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to *the entire relevant group of employees.*" *Houck v. Virginia Polytechnic Institute,* 10 F.3d at 206–07 (emphasis added). Although the absence of such evidence of systemic discrimination in the instant case may not alone be enough to defeat an Equal Pay Act claim, it, combined with Strag's improper identification of a male comparator, suggests that the district court did not err in granting summary judgment in favor of the College on the ground that a proper *prima facie* case was not established.[1]

■■■ Third, even if a *prima facie* case has been properly established by Strag, the burden shifts to the College to prove by a preponderance of evidence that the salary disparity is based upon one of the four enumerated statutory factors—here, that the salary

---

1. Strag attempts to support her argument that the salary discrepancy is gender-motivated by stating that another female instructor, Donna Durham, has also filed an Equal Pay Act lawsuit against the College. As noted by the College in its brief, however, the two plaintiffs cannot "bootstrap" themselves past summary judgment simply by asserting that they have both made the same claims against the same employer.

difference is based on a factor *other than sex;* the College has clearly carried that burden here. In the proceedings before the district court, the College, in support of its motion for summary judgment, put forth numerous uncontradicted affidavits detailing the gender-neutral reasons for hiring Swain at a $33,000 starting salary under the Special Salary Provision of the College's Salary Plan. Indeed, the affidavits leave no doubt that Swain was extremely well known and respected in the College community for his innovative Coastal Biology class, that he had established a reputation as an excellent and innovative teacher with a great deal of experience, and that he used state-of-the-art technology in his classes which other teachers do not use. Additionally, the record makes clear that: (1) Swain had 24 years of teaching experience, as compared to Strag's nine years; (2) Swain's salary at the public high school would have been $30,000 for the 1987–88 school year, as compared to Strag's $17,-220 salary at the East Carolina University; (3) Swain was unwilling to take a pay cut in order to teach at the College, while Strag was willing to do so in order to avoid a long commute; and (4) Swain was a much better known teacher than Strag, and the administrators felt that hiring him may attract more students to the College. Most significant, the fact that Swain was paid more by the College than even his *male* colleagues, one of whom was the *Chairman* of the Science Department, with 14 years more seniority than Swain, clearly suggests that the higher wage paid to Swain as compared to Strag was not based on gender, but rather on the sex-neutral factors detailed above. The record therefore clearly supports the district court's determination that the College sufficiently carried its burden of showing that the salary differential between Strag and Swain was based on factors other than sex. *See Fowler,* 978 F.2d at 161 (holding that gender-neutral justifications—such as that the male comparator has more experience or that the comparator is considered a "more important" employee—are "persuasive" reasons for salary

disparities, though finding that in that case, the evidence supporting such gender-neutral justifications did not rise to such an overwhelming level that a jury verdict in favor of the plaintiff should be reversed).

Fourth, Strag fails satisfactorily to rebut any of the gender-neutral justifications for the salary difference put forth by the College. For example, although Strag points to a list of seven "off-scale" instructors within her department, this list includes two *female* instructors; thus, rather than suggesting that women are not given "off scale" salaries by the College, the list showed only that the College is willing to go "off" the Salary Plan for female as well as male teachers in rare occasions. More significant, Strag failed to put forth any evidence that she possessed "highly exceptional qualifications" that would have justified the College giving her an "off scale" salary.[2] Indeed, she provides this Court with no compelling reason suggesting that the College should have paid her $30,-000, when the salary at her previous job had only been $17,220. In the absence of such evidence to rebut the College's gender-neutral justifications for the pay differential, summary judgment was certainly warranted.

■ Last, as held in *Soble,* Strag cannot defeat a motion for summary judgment merely by resting upon allegations in her complaint that she is paid less than Swain. Thus, her failure to rebut the College's evidence of gender-neutrality in its salary decisions suggests that the district court's grant of summary judgment should not be reversed on appeal. Indeed, although a motion for summary judgment generally should not be granted if there exists a genuine issue of material fact that warrants a trial on the issues, such a motion cannot be denied unless the non-moving party puts forth *specific* facts evidencing that such a genuine issue *does* exist. *See Allstate Financial Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir. 1991); *Temkin v. Frederick County Commissioners,* 945 F.2d 716, 718–19 (4th Cir.1991),

---

2. As pointed out by the College in its Brief, Strag repeatedly states that she was voted Teacher of the Year by the faculty for the 1993–94 academic year, and that Swain has never won the award.

However, Swain has been nominated for the award every year since the nomination process has been in effect, while Strag had never been nominated before the year that she won.

*cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). Strag did not sufficiently carry that burden here.

## II. *Denial of Appellant's Motion for Extension*

Next, Strag contends that the district court abused its discretion in refusing to grant her motion for an extension of time in which to respond to the College's motion for summary judgment. The College, by contrast, argues that such refusal was proper in light of the fact that Strag's need for an extension was caused by her own delay in completing discovery. We find that the Court did not abuse its discretion here.

In the instant case, the College had initially moved to extend the discovery deadline so that it could take depositions of nine new witnesses identified by Strag just before expiration of the time allotted for discovery. The College proceeded to serve the subpoenas and deposition notices on the new witnesses. Strag moved for a protective order and for sanctions against the College for attempting to conduct discovery after the noted deadline. Nevertheless, the College made its motion to extend discovery and only then filed the deposition notices, being well aware that if the district court denied its motion, it would have to forego the depositions.

At the hearing on the College's motion for an extension and Strag's cross-motion for a protective order and for sanctions, the district court held that it would grant the College's motion to extend the time to allow *both* parties to take depositions until *July 7, 1994.* At that time, the College requested an extension of time to file its motion for summary judgment from June 15, 1994 to July 15, 1994, eight days after all depositions would be completed. Strag voiced her opposition to such extension. The Court refused to extend the time for the College to file the motion for summary judgment. At that time, therefore, Strag knew that the College could move for summary judgment as late as June 15, 1994, which would make her response to such a motion due by *July 5,* 1994, two days before all depositions would be completed under the new *July 7th* discovery deadline.

The College indeed filed a timely summary judgment motion on June 15, 1994, thus making Strag's response due by July 5, 1994. Two depositions—one of Dr. Ben Quinn and the other of Mrs. Betty Quinn—were scheduled on *July 6,* 1994 by the consent of both parties. In order to accommodate Strag, the College's counsel, on June 20, 1994, informed Strag's counsel that Dr. and Mrs. Quinn would be available for deposition anytime from 8:00 a.m. to 5:00 p.m. on June 27th through July 1st, the week before Strag's response to the summary judgment motion was due. Strag's counsel, however, declined to take those depositions on such an expedited schedule.

After the Quinns' deposition had been set for July 6, and less than one week before Strag's response was due, Strag moved for an extension of time to file her response, primarily basing her motion on the allegation that the two Quinn depositions would not occur until after her response was due, and that some of the earlier depositions had not yet been fully transcribed. Moreover, by an affidavit submitted by one of her attorneys, Strag argued that the extension of time was necessary in light of a delay in receiving from the College certain discovery requests containing privileged information which Strag had obtained pursuant to a consent protective order; this delay occurred because the College was late in gathering all of the requested privileged information that it had agreed to release, purportedly because the College's Director of Personnel had left for a week's vacation.

On July 1, 1994, the district court denied Strag's motion for an extension of time in which to respond to the College's summary judgment motion. On July 5, 1994, Strag accordingly filed a timely responsive brief. On appeal, Strag now alleges that the district court's denial of her motion for an extension of time amounted to an abuse of discretion. We do not agree.

Rule 56(f) of the Federal Rules of Civil Procedure provides:

Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for rea-

sons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. Pro. 56(f). In *Nguyen v. CNA Corp.*, 44 F.3d 234 (4th Cir.1995), this Court recently articulated the standard under which district courts should consider motions for extension made under Rule 56(f). In that case, the appellant argued that the district court erred in denying his request to continue the opposing party's motion for summary judgment. 44 F.3d at 241–42. In discussing the threshold considerations in reviewing such a denial, this Court noted that the non-moving party's duty to respond specifically to a summary judgment motion is expressly qualified by Rule 56(f)'s requirement that summary judgment be refused where the non-moving party has not had the opportunity to "discover information that is essential to his opposition." *Id.* at 242 (citations omitted). Noting that the denial of a Rule 56(f) motion is reviewed under an abuse of discretion standard, the Court held that in that case, the appellant had not filed affidavits specifying which aspects of discovery required more time to complete, and thus held that a continuance was *not* warranted; specifically, this Court held:

> [A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.

*Id.* (citations omitted). Accordingly, this Court affirmed the trial court's denial of the Rule 56(f) motion, holding that although the appellant's brief on appeal offered numerous vague assertions as to matters upon which the district court should have allowed discovery to continue before deciding the motion for summary judgment, the appellant at no point properly focused the Court's attention on any affidavit presented to the district court that "particularly specifie[d] legitimate needs for further discovery." *Id.* Accordingly, the Court found that the district court did

not abuse its discretion in denying the appellant's motion for continuance pursuant to Rule 56(f). *Id.*

Likewise, in *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922 (4th Cir.1995), this Court found that an extension of time for summary judgment was inappropriate where the delay in conducting discovery was not the fault of the moving party. In that case, the district court had required all discovery to be completed by July 9, 1993, and required the summary judgment motions to be filed by June 24, 1993. 43 F.3d at 929. The moving party had concluded its discovery and filed a motion for summary judgment on June 24, 1993, but the non-moving party had neglected to serve any written discovery until June 8, 1993, making its responses due as the discovery period was ending. *Id.* Moreover, the non-moving party had scheduled certain depositions even later in the discovery period than when the summary judgment motion was due, thus making its failure to complete discovery by that time inevitable. *Id.* In affirming the district court's denial of the non-moving party's motion to compel discovery before the time for summary judgment, this Court held that the non-moving party's delay in beginning discovery and the fact that a "district court [has] substantial discretion in managing discovery" suggested that the district court did not abuse its discretion. *Id.* Particularly, this Court found that a district court acts wholly within its discretion in denying additional discovery where the delay in discovery is due to the fault of the complaining party. Accordingly, the Court affirmed the district court's decision, finding that the appellant had caused the unwarranted delay in beginning discovery, and that the appellant had adequate time to complete discovery before the district court granted summary judgment. *Id.*

Under the case law described above, we accordingly find that the district court did not err in refusing to extend the time during which Appellant Strag could respond to the College's motion for summary judgment. Several considerations compel this result.

First, the primary basis of Strag's motion for extension under Rule 56(f) was

that the two depositions of Dr. and Mrs. Quinn were scheduled for the day *after* her response to the College's motion for summary judgment was due. Because this scheduling decision was Strag's own doing, however, that decision cannot properly form the basis for a Rule 56(f) extension in the instant case. Indeed, the facts suggest that the College explicitly informed Strag that the Quinns would be available for deposition *before* the response date, but that Strag decided to wait until the scheduled deposition day. More significant, it is unclear that the Quinns' depositions on their own would have created a genuine issue of material fact such as to defeat the College's motion for summary judgment; thus, even if the district court abused its discretion in denying the 56(f) motion, it certainly did not result in prejudicial error in light of Strag's inability to point to any information the Quinns would have given her in their depositions that could have been used to defeat the summary judgment motion. The denial of a Rule 56(f) motion for extension should be affirmed where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.

■ Second, Strag also alleges that the extension should have been granted because the transcriptions of earlier depositions were not yet available to her by the time she was to respond to the College's motion for summary judgment. The argument is unconvincing, however, because: (1) many of the persons whose depositions had yet not been transcribed were Strag's own witnesses, and thus she could have obtained affidavits from them rather than wait for the transcriptions if she wished to use their testimony in responding to the College's motion for summary judgment; (2) Strag's delay in beginning the depositions and in getting transcriptions was not the fault of the College; and (3) even without the transcriptions, Strag's counsel had access to what was said during the depositions. As stated in *Lone Star, supra,*

where the delay is not the fault of the moving party, a district court's decision to deny an extension of time for further discovery is wholly appropriate.

■ Third, Strag additionally appears to allege in her Brief that the reason for her delay was that the College did not timely turn over certain materials pursuant to the protective order obtained from the Court. While it is true that denial of time for extension may be inappropriate where the materials sought are the object of outstanding discovery, the information sought was ultimately turned over to Strag *before* her July 5th response deadline. Thus, it is unclear that the delay by the College was the reason why Strag sought extension; indeed, Strag's Rule 56(f) motion for an extension of time was filed *before* the date on which the College was to turn over the materials, therefore suggesting that the College's delay could not have been the motivating factor for Strag's 56(f) motion. Thus, the College's delay did not necessitate a granting of an extension within the particular facts of the instant case.

■ Finally, district courts have great discretion over the discovery process and over the mechanics of the trial process. Such decisions should therefore not be overturned unless there is a clear abuse of discretion, or unless there is a real possibility the party was prejudiced by the denial of the extension. Here, there was no such abuse of discretion because the delay in discovery was not the College's fault, and because Strag did not specifically allege why the information sought would have been sufficient to create a genuine issue of material fact such that it would have defeated summary judgment.[3] Thus, the district court's error, if any, was certainly harmless.

### III. *Sanctioning of Appellant*

■ Last, Strag contends that the district court abused its discretion in sanctioning her for the filing of a supplemental brief

---

**3.** Strag argues that the information sought contained data regarding the number of men and women teachers who were paid "off scale" by the College, and thus could have been used to defeat the College's motion for summary judg-

ment. However, the information actually contained in those documents simply showed that both men and women were paid "off scale" by the College; it did not establish that the College only gave men "off scale" salaries.

by assessing attorneys' fees and by striking her supplemental filings from the record. Because such a decision to impose sanctions is wholly within the discretion of the district court, we affirm.

In the proceedings below, Strag filed a motion for an extension of time in which to respond to the College's motion for summary judgment, which the district court denied. Strag accordingly filed a responsive brief in opposition to the summary judgment motion on July 5, 1994, and the College filed a timely reply brief on July 15, 1994. Twelve days later, on July 27, 1994, just as the district court was to begin considering the motion for summary judgment, Strag filed a "Supplemental Brief in Support of Plaintiff's Response" and an "Argument Incorporating Material Subject to Consent Protective Order." These supplemental filings were not accompanied by any motion requesting leave to file such documents, and were filed despite the district court's earlier decision to disallow an extension of time to Strag to respond to the summary judgment motion. The supplemental filings, by Strag's own admission, were limited to information that came into her possession *after* the time her first responsive brief was due. The district court accordingly struck the supplemental filings from the record.

On August 11, 1994, when the district court entered summary judgment in favor of the College, the court directed Strag to show cause why sanctions should not be imposed in the form of an award of defendant's costs, expenses, and reasonable attorneys' fees incurred by the College in responding to the supplemental brief. Strag argued that no sanctions should be imposed because: (1) the court's order denying her an extension made no explicit reference to a prohibition against filing supplemental briefs, (2) the supplemental brief contained facts not in her possession when she first responded to the College's motion, (3) the supplemental brief was "necessary to preserve the record," and (4) the district court's inherent power to sanction must be exercised with restraint and discretion. The district court nevertheless imposed sanctions. Strag now appeals this decision.

■ The case law is well established that district courts have the inherent power to sanction parties for certain bad faith conduct, even where there is no particular procedural rule that affirmatively invests the court with the power to sanction. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court addressed a case in which a district court had sanctioned a party and assessed attorneys' fees and expenses because the party had used harassment and delay tactics, and had filed false and frivolous pleadings. In affirming the imposition of the sanctions, the Supreme Court held that district courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." 501 U.S. at 43, 111 S.Ct. at 2132 (citations omitted). In finding that the sanctions in that case amounted to a proper exercise of that inherent sanctioning power, the Court noted that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45, 111 S.Ct. at 2132–33. In so holding, the Court held that the special sanction of attorneys' fees is appropriate in three circumstances: (1) where a party's litigation efforts directly benefit others, (2) where a party has willfully disobeyed a court order, and (3) where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* at 45–46, 111 S.Ct. at 2133–34. *Cf. United States v. Shaffer Equipment Co.*, 11 F.3d 450, 461–62 (4th Cir.1993) (recognizing a district court's inherent power to impose sanctions, but finding that the *dismissal* of the case altogether was too severe a sanction in that particular instance).

In the instant case, the sanctions imposed upon Strag—the assessment of attorneys' fees and the striking of the supplemental brief—were wholly appropriate for several reasons. First, in the exercise of its inherent power to sanction, the district court *did* exercise great discretion and restraint, as cautioned by the Supreme Court in *Chambers.* Indeed, the sanctions served only to punish

Strag for the actual actions taken concerning the submission of the supplemental briefs: the supplemental briefs were struck and attorneys' fees were assessed only to the extent such fees were incurred in responding to the actual supplemental briefs. The district court did not take any excessive measures against Strag such as assessing general attorneys' fees or litigation costs, or dismissing the case entirely.

Second, although Strag contends that she did not violate any rules or court orders by submitting the supplemental briefs, she fails to account for the fact that the supplemental briefs were filed despite an earlier order by the district court expressly disallowing any extension of time in which to respond to the College's motion for summary judgment. Strag makes the argument, on appeal, that because the court did not *specifically* prohibit supplemental briefs in its denial of extension, that the filing of such supplemental briefs must have thus been permitted. The argument is unconvincing, however, in light of the fact that the logical inference of the denial of the motion to extend was that Strag's reply to the summary judgment motion necessarily was to be received by July 5, 1994, and could not be submitted after that date; by filing a supplemental brief after July 5, Strag attempted to circumvent the district court's denial of her request for extension.

Third, and related, Strag argues that neither the Federal Rules nor the local rules of procedure explicitly prohibit the filing of supplemental briefs. The argument is again unconvincing since there are many filings that are not specifically prohibited by these rules but are nonetheless not usually permitted in civil litigation. As noted by the district court, "that which is not expressly prohibited is not, thereby, implicitly allowed."

Fourth, Strag argues that her intent in filing the supplemental briefs was to provide the Court with information that she did not have at the time of her initial response. However, the Court, in denying her motion to extend, had already decided that such information was *not* to be included in her response since the delay in discovery was not due to any fault on the part of the College.

Strag is not allowed, by introducing such evidence in her supplemental filings, thereby to circumvent the district court's earlier decisions ordering when discovery was to cease and when responses were to be filed.

Fifth, under *Chambers v. NASCO, supra,* it is clear that the district court had the inherent power to impose such sanctions. Because the conduct of a trial falls within the sound discretion of the district court, an appeals court should generally not disturb such a sanction, particularly if there is no prejudice to the party. Here, it is undeniable that striking the supplemental briefs meant that evidence obtained by Strag from the last few depositions was not before the district court when it made its decision to grant summary judgment to the College. However, as noted by the district court, the additional evidence *could* have been put before the district court *if it had been done properly;* that is, Strag's counsel should have moved for *leave to file the supplemental brief, with the supplemental brief attached thereto.* Instead, Strag filed the supplemental brief without requesting leave to file the same, and it was immediately made a part of the record by the Clerk of the Court; the College was therefore forced to argue against the merits of the brief, and thus forced to bear the burden of Strag's improper actions. In such a context, the imposition of sanctions was wholly appropriate.

Accordingly, the judgment is

*AFFIRMED.*