**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GISELA VORSPRECHER DIBBLE,
<u>Plaintiff-Appellant,</u>

v.

REGENTS OF THE UNIVERSITY OF
MARYLAND SYSTEM; FREEMAN A.
HRABOWSKI, Dr., in his official
capacity as President of The
University of Maryland; MICHAEL K.
HOOKER, individually and as former
president of The University of
Maryland; ARTHUR O. PITTENGER,
individually and as Dean of Arts
and Humanities, University of

Maryland Baltimore Campus;
ROBERT A. SLOANE, individually and
as Chair of the Modern Languages
and Linguistics Department,
University of Maryland Baltimore
Campus; RENATE M. FISCHETTI;
JOHN H. SINNIGEN, individually and
as Associate Professor and Former
Chair of the Modern Languages and
Linguistics Department, University
of Maryland Baltimore Campus,
<u>Defendants-Appellees,</u>

and

No. 95-2317

ANGELA B. MOORJANI, individually
and as Associate Professor and
Former Chair of the Modern
Languages and Linguistics
Department, University of Maryland
Baltimore Campus,
<u>Defendant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-93-1792-JFM)

Submitted: June 11, 1996

Decided: June 26, 1996

Before HALL and WILLIAMS, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Tracy E. Mulligan, Rockville, Maryland, for Appellant. J. Joseph
Curran, Jr., Attorney General, Anne L. Donahue, Assistant Attorney
General, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Gisela V. Dibble appeals the district court's order granting summary judgment to the Appellees in this action alleging employment discrimination. Finding no reversible error, we affirm.

Dibble, a former part-time German professor at the University of Maryland, Baltimore County ("UMBC"), filed a complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e (West 1994), alleging that the Defendants discriminated against her in various respects. Dibble named as Defendants The Regents of the University of Maryland System, the current and immediate past presidents of the University, the Dean of Arts and Humanities, the Chair of Modern Languages and Linguistics Department, and a tenured associate professor and coordinator of the German language area in that department.

Dibble asserted claims under Title VII, the Equal Pay Act of 1963 (29 U.S.C. § 206(d)(1) (1988)), and 42 U.S.C.§ 1983 (1988). Specifically, Dibble asserted that the Defendants violated those statutes by (1) failing to place her in a tenure-track position, (2) failing to pay her the salary of a full-time professor to compensate her for extra work that she performed, and (3) not renewing her part-time contract in retaliation for having filed discrimination complaints with various university officials. Finding that Dibble failed to offer evidence of any triable issues, the district court granted summary judgment to the Defendants on all claims.

Dibble is a German-born, Protestant woman. She held various positions at the University teaching German. From 1979 to 1984, Dibble worked as a teaching assistant (a faculty position) and taught college level courses at the University's College Park Campus. From 1983 to 1984, she also taught part-time at UMBC while completing her Ph.D dissertation. In the fall of 1984, UMBC hired Dibble as a part-time instructor in the Department of Modern languages and Linguistics. Dibble remained a part-time instructor until 1988. During the 1988-1989 academic year, she was hired as a full-time lecturer to replace Dr. Brigitte May who was on leave for one year. In 1989, UMBC

3

returned Dibble to part-time instructor status, a position she held until the 1991-1992 academic year.

Sometime at the end of her year appointment as a full-time professor in 1989, Dibble began complaining to Dr. Fischetti about her course assignments and failure to be assigned upper level courses. She made additional complaints to Dr. Sloane and Dean Pittenger in December 1990. In the fall of 1991, Sloane informed Dibble that he had decided not to recommend renewal of her employment contract for the following fall semester. In December 1991, Dibble complained to University President Hooker of sexual discrimination. On May 15, 1992, UMBC formally declined to renew Dibble's employment contract for the fall 1992 semester.

There is a hierarchy of faculty positions at UMBC. The tenured or tenure-track jobs are titled full professors, associate professors, and assistance professors. The associate and full professor jobs typically are tenured positions. An assistant professor is not tenured, but is entitled to tenure consideration no later than six years after commencing university employment. All other categories, such as lecturer and instructor, are non-tenure track positions: they are not tenured nor do they lead to consideration for tenure.

Part-time faculty members at UMBC are hired on a contractual basis for specific instructional duties for a specific period time, generally one semester. In Dibble's case, she received an appointment letter each semester beginning in the fall of 1984 through the spring of 1992. The appointment letters contained the following language:

> It should be understood that this appointment implies no commitment on the apart of the University beyond the [Spring][Fall] semester, although circumstances may lead to its renewal.

The letters were signed by the University and counter-signed by Dibble. The agreement for the 1988-1989 academic year for which Dibble was hired as a full-time lecturer contained a similar term limitation.

4

We review the district court's award of summary judgment de novo. Higgins v. E.I. Du Pont de Nemours & Co. , 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In ruling on a motion for summary judgment, a court must assess the evidence in the light most favorable to the non-moving party. Charbonnages de France v. Smith , 597 F.2d 406, 414 (4th Cir. 1979). Although summary judgment disposition should be used sparingly in employment discrimination cases, it is appropriate where there is no genuine dispute of material fact. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004-05 (4th Cir.), cert. denied, 484 U.S. 897 (1987).

A. Denial of Tenure-Track Position

Dibble's first claim is that the Defendants violated Title VII and 42 U.S.C. § 1983 by denying her appointment and opportunity for a full-time tenure-track position. Dibble alleges discrimination under Title VII on the basis of her gender, religion, and national origin. Dibble's claim under § 1983 appears to be premised on underlying violations of the First and Fourteenth Amendments to the Constitution. More specifically, Dibble seems to assert that the Defendants refused to grant her a tenure-track position based upon her non-Marxist world view, with which the Defendants disagreed. See generally Ollman v. Toll, 518 F. Supp. 1196, 1201-02 (D. Md. 1981), aff'd, 704 F.2d 139 (4th Cir. 1983) (state may not exclude person from employment based upon political beliefs).

As the district court correctly noted, however, this claim suffers from a fundamental factual flaw. The record contains absolutely no evidence that there was a tenure-track position available in the German department at UMBC during any relevant time frame to which Dibble could have been appointed. Dibble herself does not dispute this fact. Rather, she contends that a tenure-track position should have been opened for her in 1992. In that year, Dr. May, who had held such a position, withdrew from the tenure track because she was unable to meet certain requirements for tenure. After that occurred, UMBC decided that instead of continuing the tenure-track position in German, the position that had been held by Dr. May should be divided

into a number of half-time instructor positions among the French, Russian, Spanish, and German departments because of budget constraints.

Nonetheless, Dibble asserts that if she had not held the "world view" that she does, UMBC would have retained the tenure-track position in German and appointed her to it. However, the record bears no evidence to support such a claim. Dibble failed to present any facts to show that UMBC was not facing budget constraints or that the number of students enrolled in its French, Russian, and Spanish classes did not justify creating half-time instructor positions in those departments. Since Dibble bears the burden to prove her claim, the absence of any evidence entitled the Defendants to summary judgment, and the district court correctly so held. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

B. Equal Pay Act Claim

Dibble's second claim is brought under the Equal Pay Act. Dibble alleged that she was paid one-third the salary of her "male counterpart," Dr. Edward Larkey, even though she was carrying an equivalent teaching load and performing essentially the same tasks. To establish a prima facie case under the Equal Pay Act, Dibble must show that (1) an employer is paying different wages to employees, (2) of opposite sex, (3) "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); Houck v. Virginia Polytechnic Inst., 10 F.3d 204, 206 (4th Cir. 1993). Dibble must properly select a specific male comparator, Strag v. Board of Trustees, 55 F.3d 943, 950 (4th Cir. 1995), looking to see if they share a common core of tasks in their jobs. Hassman v. Valley Motors, Inc., 790 F. Supp. 564, 567 (D. Md. 1992). If the jobs to be compared have a common core of tasks, the inquiry turns on whether the differing or additional tasks require greater skill or responsibility. Cherrey v. Thompson Steel Co., 805 F. Supp. 1257, 1262 (D. Md. 1992).

The undisputed evidence in the record reveals that the duties of a part-time professor are far less demanding than those of an assistant

6

professor or another full-time faculty member. In other words, Dibble is unable to show that Larkey is an appropriate male comparator. Dibble, as a part-time teacher, was required only to teach the course and have an office hour for that course so that students could have access to the instructor. In contrast, Larkey, as an assistant professor, was required to publish and engage actively in research in addition to teaching. He was required to advise students in their major, participate in curriculum development, oversee the curriculum, participate in departmental, university, and community activities, and attend departmental meetings. Larkey's additional duties constituted fifty percent of his job responsibilities.

Nonetheless, Dibble asserts that she performed equal work to Larkey because she voluntarily took on the additional responsibilities of teaching a full course lead, designing and developing courses, participating in curriculum development, researching and publishing, and participating in departmental meetings and student activities. Dibble contends that she and the University had a parol agreement regarding her employment.

The district court properly found Dibble's Equal Pay Act claim to be meritless. First, she produced no evidence of a parol agreement. Second, Dibble could not unilaterally modify her written employment contract by voluntarily performing work not required of her. Third, the additional duties that Dibble performed did not equal Larkey's work. Dibble offered no evidence that she advised students in their major, oversaw the curriculum, or participated in departmental, university, and community activities to the same extent as is required of assistant professors. The fact that Dibble chose to assume additional duties does not entitle her to more pay. Therefore, the district court properly granted summary judgment to the Defendants on her Equal Pay Act claim.

C. Retaliation Claim

Dibble's final claim asserts that the Defendants retaliated against her for filing complaints of discriminatory treatment by not renewing her part-time contract. To prevail on her retaliation claim, Dibble must show that she engaged in protected activity, that UMBC took adverse employment action against her, and (3) that a causal connec-

7

tion existed between the protected activity and the adverse employment action. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). Once Dibble establishes her prima facie case, the Defendants can rebut it with proof of some legitimate, non-retaliatory reason for the adverse action. Id. The burden of proof then shifts to Dibble to establish by a preponderance of the evidence that the proffered reasons are pretextual. Id.

The district court properly found that Dibble failed to establish a prima facie case of retaliation. The only evidence Dibble offered to support her claim is that the decision not to renew was not formalized until after she complained to certain University officials. However, the record establishes that the non-renewal decision was made in the fall of 1991. Dr. Sloane informed Dibble in September or October of 1991 that he was not going to recommend the renewal of her contract. Dibble acknowledged that Sloane had the power to make appointment decisions. Dibble did not complain to President Hooker of Sloane's decision until December 1991. Dibble received written notification of her non-renewal in May 1992.

Thus, while it is true that Dibble did not receive formal notification of her non-renewal until May 1992, she was aware as early as the fall of 1991 that her contract likely would not be renewed. Thus, the non-renewal decision was made before her complaints to the University president. Accordingly, absent some evidence of a causal connection between her complaints and the adverse employment decision, Dibble cannot establish a prima facie case of retaliation. Dibble offered no evidence suggesting that if the complaints had not been made, UMBC would have rescinded the decision to terminate her part-time contract. We find nothing in the record to suggest that the district court erred in concluding that Dibble failed to prove a causal nexus between her complaints to University officials and the decision to terminate her contract.

Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8